1  WHATLEY KALLAS LLC
   Alan M. Mansfield (SBN 125998)
2  amansfield@whatleykallas.com
   355 So. Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
   Tel: (310) 684-2504
4  Fax: (888) 331-9633

5  DOYLE LOWTHER LLP
   William J. Doyle II (SBN 188069)
6  bill@doylelowther.com
   10200 Willow Creek Rd., Suite 150
7  San Diego, CA 92131
   Tel: (858) 935-9960
8  Fax: (858) 939-1939

9  *Attorneys for Plaintiff*

10 [Additional counsel on signature page]

11

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14                   **SOUTHERN DIVISION**

15 | JEREMY WILTON, Individually and | CASE NO.: SACV12 - 01917 JVS (ANx)
   | on behalf of all others similarly |
16 | situated, | CLASS ACTION

17          Plaintiff,            **COMPLAINT FOR DAMAGES AND**
18      v.                        **EQUITABLE RELIEF**

19 KIA MOTORS AMERICA, INC., a
   domestic corporation, HYUNDAI
20 MOTOR AMERICA, INC., a domestic
   corporation,                   JURY TRIAL DEMANDED
21
          Defendants.
22

23

24

25

26

27

28

                          1

Plaintiff Jeremy Wilton, through his undersigned counsel, files this Class Action Complaint for violation of California law, and the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA"), for himself and all others similarly situated against Kia Motors America, Inc. ("Kia") and Hyundai Motor America, Inc. ("Hyundai") (collectively "Defendants").   Plaintiff alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## NATURE OF THE ACTION

1.     Defendants market and sell numerous models of vehicles in the United States, including the following 2011 through 2013 models: 2013 Hyundai Accent, Azera, Elantra, Genesis, Santa Fe, Tucson and Veloster; 2013 Kia Rio, Sorento, Soul and Sportage; 2012 Hyundai Accent, Azera, Elantra, Genesis, Sonata, Tucson and Veloster; 2012 Kia Optima hybrid, Rio, Sorento, Soul and Sportage; 2011 Hyundai Elantra and Sonata hybrid; and 2011 Kia Optima hybrid (the "Subject Vehicles").

2.     Over the past two years, Defendants have uniformly represented in product advertising that each of the Subject Vehicles will obtain a standard mile per gallon range.  However, based on a federal government investigation spawned by many consumer complaints, both Defendants have recently admitted that the calculations for these ranges were miscalculated and uniformly wrong.  This is material to consumers, since as stated by Gina McCarthy of the U.S. Environmental Protection Agency ("EPA"): "Consumers rely on the window sticker to help make informed choices about the cars they buy."

3.     According to the EPA, this is not a situation where the company complied with EPA testing procedures in accordance with regulations promulgated by the government, but rather admittedly failed to comply with such procedures and regulations.   This action does not seek to alter or amend Defendants'

obligations for providing correct mileage calculation statements, which Defendants admittedly did not do. These representations were made in the Subject Vehicles' advertising, including brochures, billboards, and publicly disseminated commercials.

4. These false representations are violations of California law and the MMWA.

5. Defendants engaged in an extensive advertising campaign emanating from California and taking place throughout the United States and Canada. Part of the goal of this advertising campaign was to convince consumers that many Subject Vehicles achieved gas mileage in the 40 mile per gallon range, which is a very important threshold for marketing purposes. While the differences vary, in almost all the circumstances in question as a result of the downward adjustment the vehicles will not reach that level -- a fact that was and is material to Plaintiff and the reasonable consumer who purchased or leased at least one of the Subject Vehicles.

6. Because of this deceptive advertising campaign, and the claims made therein, Defendants have charged a price premium for the Subject Vehicles and/or increased demand therefor. While Defendants have attempted to address this admitted problem by offering consumers debit cards, they either know or reasonably should know what they are offering will not reimburse consumers for their actual out of pocket losses as the debit card is only for certain mileage differences, requires them to visit their car dealer for "verification" purposes, is not in cash such that they can count on the entire amount not being used, and fails to provide compensation for the fact that many consumers, such as Plaintiff, would not have bought or leased these vehicles at the prices they did if the true facts had been timely disclosed.

7. This action is brought by Plaintiff on behalf of a class comprising all similarly situated consumers who purchased or leased one or more of the Subject

1   Vehicles other than for resale or distribution and seeks to halt the use of a "refund"

2   program that does not fully compensate consumers for their losses and does not

3   operate as a release of claims, or at a minimum ensures it is an offset against actual

4   losses, as well as to correct the misperception that such false and deceptive

5   advertising has created in the minds of consumers and obtain full redress for those

6   who purchased or leased one or more Subject Vehicles.

7   **JURISDICTION AND VENUE**

8        8.    This Court has jurisdiction over the subject matter presented by this

9   Complaint because it is a class action arising under 28 U.S.C. § 1332(d), which,

10   under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119

11   Stat. 4 (2005), explicitly provides for the original jurisdiction of the federal courts

12   of any class action in which any member of the class is a citizen of a state different

13   from any defendant, and in which the matter in controversy exceeds in the

14   aggregate the sum of $5,000,000, exclusive of interest and costs.  Plaintiff allege

15   that the total claims of individual class members are in excess of $5,000,000 in the

16   aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2)

17   and (5).  Plaintiff Jeremy Wilton is a citizen of the State of Washington, whereas

18   Defendants can be considered citizens of California.   Therefore, diversity of

19   citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).  Plaintiff

20   alleges that the total number of members of each of the proposed class is greater

21   than 100, under 28 U.S.C. § 1332(d)(5)(B).

22        9.    Venue in this District is proper under 28 U.S.C. § 1391(b) because

23   Defendants' principal places of business and corporate headquarters that are the

24   nerve center of their North American operations are located in this District and

25   Division, both conduct business within, may be found in, and are subject to

26   personal jurisdiction in this District and Division.

27   **PARTIES**

28        10.   On personal knowledge, Plaintiff Jeremy Wilton is an individual

4

consumer over the age of eighteen. At all relevant times, he resided in Snohomish County, Washington. Plaintiff Wilton purchased a 2012 Kia Rio on or about January 28, 2012. Plaintiff was exposed to Defendants' false and deceptive advertising claims as detailed below. Based on spiraling gas prices a substantial factor in his decision to purchase his vehicle was the representation it would achieve 40 miles per gallon. He could never achieve that level. Plaintiff Wilton believes he paid a price premium for his vehicle based on the claim it would achieve over 40 miles per gallon, and would not have paid a price premium, if he would have purchased this vehicle at all, had the true facts been disclosed to him. Plaintiff thus has standing to assert all of the claims set forth as he suffered injury in fact and a loss of money or property as a result of Defendants' conduct.

11. Defendant Kia Motors America, Inc. is a domestic corporation whose corporate offices and North American headquarters are at 111 Peters Canyon Road, Irvine, California 92606. Defendant's primary officers and directors are located in this District and its principal place of business and operations are in this District. For purposes of diversity jurisdiction, based on its substantial corporate presence and officers and directors located here, Defendant can be considered a citizen of California.

12. Defendant Hyundai Motor America is a domestic corporation whose corporate headquarters for North America are located at 10550 Talbert Ave., Fountain Valley, California 92708. Defendant's primary officers and directors are located in this District and its principal place of business and operations are in this District. For purposes of diversity jurisdiction, based on its substantial corporate presence and officers and directors located here, Defendant can be considered a citizen of California. Hyundai has a controlling 34 percent ownership interest stake in Kia and the companies share the same chairman, Mong-Koo Chung and the same testing facilities. The misrepresented miles per gallon figures were based on testing done at the Hyundai testing facilities. Pursuant to the above Defendant

1  Hyundai Motor America and Defendant Kia Motors America, Inc. are jointly and
2  severally liable for the acts and omissions alleged herein.

3      13.    Defendants and their subsidiaries, affiliates, and other related entities,
4  and their respective employees were the agents, servants and employees of
5  Defendants, and each was acting within the purpose and scope of that agency and
6  employment.

7      14.    Whenever reference is made to any act by Defendants or their
8  subsidiaries, affiliates, and other related entities, such allegation shall be deemed to
9  mean that the principals, officers, directors, employees, agents, and/or
10 representatives of Defendants committed, knew of, performed, authorized, ratified
11 and/or directed that act or transaction for Defendant while engaged in the scope of
12 their duties.

13                            **FACTUAL ALLEGATIONS**

14     15.    On November 2, 2012, the EPA announced the results of an
15 investigation into allegations that certain 2011-2013 model vehicles manufactured
16 by Hyundai and Kia uniformly overstated the estimated gas mileage.  The EPA
17 found the gas mileage was overstated in 13 Hyundai and Kia models, with some
18 models overstating the mileage by as much as 6 mpg.

19     16.    The seven Hyundai models and six Kia models affected by the EPA
20 investigation and their mpg discrepancies ("Subject Vehicles") are identified in the
21 table below:

22

23 **Hyundai – Kia 2013 Model Year Fuel Economy Label Changes**

| Manuf | Model | Type | City FE (MPG) | | | Highway FE (MPG) | | |
|-------|-------|------|------|-----|--------|-----|-----|--------|
| | | | old | new | change | old | new | change |
| Hyundai | Accent | Automatic | 30 | 28 | −2 | 40 | 37 | −3 |
| | | Manual | 30 | 28 | −2 | 40 | 37 | −3 |
| | Azera | 3.3L Automatic | 20 | 20 | 0 | 30 | 29 | −1 |

6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Elantra | 1.8 L Automatic | 29 | 28 | −1 | 40 | 38 | −2 |
| | 1.8 L Manual | 29 | 28 | −1 | 40 | 38 | −2 |
| | 1.8 L Blue Automatic | 30 | 28 | −2 | 40 | 38 | −2 |
| | 1.8 L GT Automatic | 28 | 27 | −1 | 39 | 37 | −2 |
| | 1.8 L GT Manual | 27 | 26 | −1 | 39 | 37 | −2 |
| | Elantra Coupe Automatic | 28 | 27 | −1 | 39 | 37 | −2 |
| | Elantra Coupe Manual | 28 | 28 | −1 | 40 | 38 | −2 |
| Genesis | 5.0 L R–Spec Automatic | 16 | 16 | 0 | 25 | 25 | 0 |
| | 3.8 L Automatic | 19 | 18 | −1 | 29 | 28 | −1 |
| Santa Fe | 2.4 L Sport Automatic 4wd | 21 | 20 | −1 | 28 | 26 | −2 |
| | 2.4 L Sport Automatic 2wd | 22 | 21 | −1 | 33 | 29 | −4 |
| | 2.0 L Sport Automatic 4wd | 20 | 19 | −1 | 27 | 24 | −3 |
| | 2.0 L Sport Automatic 2wd | 21 | 20 | −1 | 31 | 27 | −4 |
| Tucson | 2.4L Automatic 4wd | 21 | 20 | −1 | 28 | 27 | −1 |
| | 2.4L Automatic 2wd | 22 | 21 | −1 | 32 | 30 | −2 |
| | 2.4L Manual 4wd | 20 | 19 | −1 | 27 | 25 | −2 |
| | 2.4L Manual 2wd | 21 | 20 | −1 | 29 | 27 | −2 |
| | 2.0L Automatic 2wd | 23 | 22 | −1 | 31 | 29 | −2 |
| | 2.0L Manual 2wd | 20 | 20 | 0 | 27 | 26 | −1 |
| Veloster | Automatic | 29 | 28 | −1 | 40 | 37 | −3 |
| | Manual | 28 | 27 | −1 | 40 | 37 | −3 |
| | Turbo Automatic | 25 | 24 | −2 | 34 | 31 | −3 |

7

| Manuf | Carline | Model | old | new | change | old | new | change |
|---|---|---|---|---|---|---|---|---|
| | | Turbo Manual | 26 | 24 | −2 | 38 | 35 | −3 |
| Kia | Rio | Automatic | 30 | 28 | −2 | 40 | 36 | −4 |
| | | Manual | 30 | 29 | −1 | 40 | 37 | −3 |
| | | Eco Automatic | 31 | 30 | −1 | 40 | 36 | −4 |
| | Sorento | 2.4 L Automatic 4wd SIDI | 21 | 20 | −1 | 28 | 26 | −2 |
| | | 2.4 L Automatic 2wd SIDI | 22 | 21 | −1 | 32 | 30 | −2 |
| | Soul | 1.6 L Soul Eco | 29 | 26 | −3 | 36 | 31 | −5 |
| | | 1.6 L Soul Automatic | 27 | 25 | −2 | 35 | 30 | −5 |
| | | 1.6 L Soul Manual | 27 | 25 | −2 | 35 | 30 | −5 |
| | | 2.0 L Soul Eco | 27 | 24 | −3 | 35 | 29 | −6 |
| | | 2.0 L Soul Automatic | 26 | 23 | −3 | 34 | 28 | −6 |
| | | 2.0 L Soul Manual | 26 | 24 | −2 | 34 | 29 | −5 |
| | Sportage | 2.4 L Automatic 4wd | 21 | 20 | −1 | 28 | 27 | −1 |
| | | 2.4 L Automatic 2wd | 22 | 21 | −1 | 32 | 30 | −2 |
| | | 2.4 L Manual 4wd | 20 | 19 | −1 | 27 | 25 | −2 |
| | | 2.4 L Manual 2wd | 21 | 20 | −1 | 29 | 27 | −2 |
| | | 2.0 L Automatic 2wd | 22 | 21 | −1 | 29 | 28 | −1 |
| | | 2.0 L Automatic 4wd | 21 | 20 | −1 | 26 | 25 | −1 |

**Hyundai – Kia 2012 Model Year Fuel Economy Label Changes**

| Manuf | Carline | Model | City FE (MPG) | | | Highway FE (MPG) | | |
|---|---|---|---|---|---|---|---|---|
| | | | old | new | change | old | new | change |
| Hyundai | Accent | 1.8 L Automatic | 30 | 28 | −2 | 40 | 37 | −3 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 1.8 L Manual | 30 | 28 | −2 | 40 | 37 | −3 |
| | Azera | 3.3L Automatic | 20 | 20 | 0 | 29 | 28 | −1 |
| | Elantra | 1.8 L Automatic | 29 | 28 | −1 | 40 | 38 | −2 |
| | | 1.8 L Manual | 29 | 28 | −1 | 40 | 38 | −2 |
| | Genesis | 5.0 L Automatic | 17 | 17 | 0 | 26 | 25 | −1 |
| | | 4.6 L Automatic | 17 | 16 | −1 | 26 | 25 | −1 |
| | | 5.0 L R–Spec Automatic | 16 | 16 | 0 | 25 | 25 | 0 |
| | | 3.8 L Automatic | 19 | 18 | −1 | 29 | 28 | −1 |
| | Sonata | Hybrid | 35 | 34 | −1 | 40 | 39 | −1 |
| | Tucson | 2.4L Automatic 4wd | 21 | 20 | −1 | 28 | 27 | −1 |
| | | 2.4L Automatic 2wd | 22 | 21 | −1 | 32 | 30 | −2 |
| | | 2.4L Manual 4wd | 20 | 19 | −1 | 27 | 25 | −2 |
| | | 2.4L Manual 2wd | 21 | 20 | −1 | 29 | 27 | −2 |
| | | 2.0L Automatic 2wd | 23 | 22 | −1 | 31 | 29 | −2 |
| | | 2.0L Manual 2wd | 20 | 20 | 0 | 27 | 26 | −1 |
| | Veloster | Automatic | 29 | 27 | −2 | 38 | 35 | −3 |
| | | Manual | 28 | 27 | −1 | 40 | 37 | −3 |
| Kia | Optima | Hybrid | 35 | 34 | −1 | 40 | 39 | −1 |
| | Rio | Automatic | 30 | 28 | −2 | 40 | 36 | −4 |
| | | Manual | 30 | 29 | −1 | 40 | 37 | −3 |
| | Sorento | 2.4 L Automatic 4wd SIDI | 21 | 20 | −1 | 28 | 26 | −2 |
| | | 2.4 L Automatic 2wd SIDI | 22 | 21 | −1 | 32 | 30 | −2 |
| | Soul | 1.6 L Soul Eco | 29 | 26 | −3 | 36 | 31 | −5 |
| | | 1.6 L Soul Automatic | 27 | 25 | −2 | 35 | 30 | −5 |
| | | 1.6 L Soul Manual | 27 | 25 | −2 | 35 | 30 | −5 |
| | | 2.0 L Soul Eco | 27 | 24 | −3 | 35 | 29 | −6 |

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2.0 L Soul Automatic | 26 | 23 | –3 | 34 | 28 | –6 |
| | 2.0 L Soul Manual | 26 | 24 | –2 | 34 | 29 | –5 |
| Sportage | 2.4 L Automatic 4wd | 21 | 20 | –1 | 28 | 27 | –1 |
| | 2.4 L Automatic 2wd | 22 | 21 | –1 | 32 | 30 | –2 |
| | 2.4 L Manual 4wd | 20 | 19 | –1 | 27 | 25 | –2 |
| | 2.4 L Manual 2wd | 21 | 20 | –1 | 29 | 27 | –2 |
| | 2.0 L Automatic 2wd | 22 | 21 | –1 | 29 | 28 | –1 |
| | 2.0 L Automatic 4wd | 21 | 20 | –1 | 26 | 25 | –1 |

**Hyundai – Kia 2011 Model Year Fuel Economy Label Changes**

| Manuf | Carline | Model | City FE (MPG) | | | Highway FE (MPG) | | |
|---|---|---|---|---|---|---|---|---|
| | | | old | new | change | old | new | change |
| Hyundai | Elantra | 1.8 L Automatic | 29 | 28 | –1 | 40 | 38 | –2 |
| | | 1.8 L Manual | 29 | 28 | –1 | 40 | 38 | –2 |
| | Sonata | Hybrid | 35 | 34 | –1 | 40 | 39 | –1 |
| Kia | Optima | Hybrid | 35 | 34 | –1 | 40 | 39 | –1 |

17.    Defendants distribute, market, and sell the Subject Vehicles throughout the United States and Canada.  According to defendants, over 900,000 of the Subject Vehicles were sold in the United States, and 172,000 of these vehicles were sold in Canada.

18.    The EPA investigation into the Subject Vehicles was initiated after the EPA received numerous consumer complaints alleging Subject Vehicle owners were getting substantially less than the manufacturers' represented miles per gallon. There have also been complaints from other car manufacturers that the miles per gallon on Hyundai and Kia vehicles were substantially and routinely overestimated.

19.    The EPA routinely conducts audits of vehicles to confirm the represented mileage is correct.  Despite this, an EPA finding that a vehicle

10

manufacturer overstated gas mileage is a rarity.  Since 2000, only twice has the EPA auditing program uncovered vehicles whose mileage stickers were incorrect and needed to be relabeled, both of which involved only a single vehicle model. The EPA's Hyundai/Kia investigation is the first instance where the EPA has found a large number of vehicles from the same manufacturers deviated significantly from the manufacturer represented mileage figures.

20.    With fuel prices at an all-time high, Plaintiff was looking for a fuel-efficient car.

21.    Prior to purchase, Plaintiff saw and relied upon Defendants' advertising campaign for the Subject Vehicles, including advertising brochures prepared by Defendants and disseminated by their dealer network.  He bought his vehicle relying on the gas mileage claims made by Defendants related to their vehicle.  In discussing the gas mileage of these vehicles, Defendants represented the Kia Rio will achieve average City/Highway mileage of 30/40 mpg.   These statements were also contained on the vehicles' pricing sticker.

22.    Plaintiff felt this was the best way to make a contribution to the general welfare and save money with much improved performance and believed they paid a premium for their vehicles because of this represented higher fuel economy.  However, since purchasing his Subject Vehicle, Plaintiff has received materially less miles per gallon average than advertised by Defendants.

23.    Other consumers have reported similar experiences and complained to the U.S. Environmental Protection Agency to launch an investigation into such discrepancies.

24.    Such discrepancies are material to consumers, since if the average consumer drives 12,000 miles per year and as stated under California law the average useful life of such vehicles is 120,000 miles, this results in additional costs of thousands of dollars per consumer over the estimated useful life of these vehicles, in addition to the premiums paid for these vehicles.

25.     Because of the EPA's investigation, it was recently publicly revealed Plaintiff and other class members were correct, and that Defendants' representations about the gas mileage in the Subject Vehicles were materially misstated between one and six miles per gallon.  The EPA discovered inflated gasoline economy numbers on a wide range of Hyundai and Kia models in an investigation sparked by consumer complaints.  The exaggerated numbers had helped push some of the models into the much-vaunted 40 miles per gallon club.  This appeared to be a concerted effort, as the EPA said it had come across the same problem only twice since 2000.  "This is the first time where a large number of vehicles from the same manufacturer have deviated so significantly," the EPA said.

26.     Both defendants admitted these errors and blamed "procedural errors" at their joint testing operations in South Korea for the overstated fuel economy claims.  "I sincerely apologize to all affected Hyundai and Kia customers, and I regret these errors occurred," said W.C. Yang, chief technology officer of Hyundai/Kia research and development, in a statement.

27.     As further evidence of the materiality of these discrepancies to the reasonable consumer, Edmonds.com analyst John O'Dell predicted the partnership, which forms the world's fifth-largest car making group by sales, will be long dogged by the EPA revelations.  "Whether an honest mistake or a deliberate corporate effort to fudge the numbers, the fact that the companies' ballyhooed 40 MPG cars are no longer members of that august club," he said on or about November 2, 2012.  "In an industry where reputation is so important, this will undoubtedly give both carmakers ugly black eyes."

28.     Plaintiff's previous attempts to correct these issues by complaining to Hyundai or Kia to have this mileage problem corrected have been frustrating and without success, as he was previously told by Kia or Hyundai representatives there was nothing wrong with his vehicle.  These new revelations are directly contrary to what Hyundai and Kia were publicly telling consumer just a few weeks ago.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

29.     Defendants' advertising brochures, print and broadcast advertisements, also fail to comply with the requirements of the Federal Trade Commission for advertisements of gas mileage figures as set forth in 16 C.F.R. § 259.   Such representations and omissions of material fact were a significant factor in Plaintiff's decision to purchase his Subject Vehicle.   If Defendants had disclosed they had miscalculated or misrepresented the actual mileage figures or he would obtain worse gas mileage, Plaintiff would not have bought the vehicle or paid the premium price he did.   Based on the dollar amounts at issue, such representations over gas mileage were material.

30.     Recognizing the materiality of these misrepresentations, Defendants announced they were each adopting a "refund" program that would reimburse consumers for their losses.   However, this program is fraught with problems.   First, there is no indication individual notice will be sent to Class members.   Second, it only seeks to reimburse consumers for mileage discrepancies that are "recalled" by the vehicle dealer.   Third, it does not offer consumers the ability to return their vehicles or obtain reimbursement for the price premium they paid.   Fourth, it only offers consumers debit cards for reimbursement, even though it is well known that consumers routinely do not use the full value of such cards.

31.     While such a program is recognition of the materiality of these issues to consumers, such a program requires Court supervision and provide consumers the opportunity to obtain full refunds or at least a more robust cash refund mechanism.

32.     As Defendants should have had the correct mileage information cited herein in its possession prior to marketing the Subject Vehicles and was placed on notice by consumers early on that the represented figures it was reporting to consumers were not correct, it either knew or reasonably should have known it was overstating the miles per gallon claims for each of the Subject Vehicles.

33.     Defendants apparently placed profit before integrity in the marketing

13

and sale of the Subject Vehicles.  Plaintiff and members of the Class suffered injury in that they and others spent money on products that were not what they were represented to be and therefore lacked the value Defendants led them to believe and/or for which they paid in a premium purchase or lease price for a Subject Vehicle.

34.    Such conduct is ongoing and continues to this date.  Despite receiving informal demands to remedy the issues complained of prior to the initiation of this action, Defendants have failed and/or refused to correct and remedy its conduct informally, necessitating this action.

## CLASS ALLEGATIONS

35.    Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and seeks certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23.  The proposed class is defined as:

> All persons who purchased or leased a Subject Vehicle sold by Defendants in either the United States or Canada before November 3, 2012 other than for resale or distribution (the "Class").  Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and the legal representatives, heirs, successors and assigns and any entity in which they have or have had a controlling interest.

36.    Defendants' practices and omissions were applied uniformly to all members of the Class during the Class Period, so that the questions of law and fact are common to all members of the Class.  All members of the Class were and are similarly affected by having been exposed to the misrepresentations, purchased or leased and used the Subject Vehicles for their intended and foreseeable purpose, and the relief sought is for the benefit of Plaintiff and members of the Class.

37.    The Class is so numerous that joinder of all members would be

14

impractical. As there are over 900,000 sales of the Subject Vehicles in the effected states, the number of affected consumers would at least be in the hundreds of thousands, making joinder impossible.

38.    Questions of law and fact common to each Class member exists that predominate over questions affecting only individual members, including, *inter alia*:

(a)    Whether Defendants' practices and representations made in connection with the labeling, advertising, marketing, promotion and sale of the Subject Vehicles were deceptive, unlawful or unfair, thereby violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* and California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* and the other state laws set forth;

(b)    Whether Defendants' practices and representations made in connection with the labeling, advertising, marketing, promotion and sale of the Subject Vehicles constituted a systematic breach of warranty, in violation of state law and the MMWA; and

(c)    Whether Defendants' conduct injured consumers and if so, the extent of the injury.

39.    The claims asserted by Plaintiff are typical of the claims of the Class members, as his claims arise from the same course of conduct by Defendants and the relief sought is common. Plaintiff, like all Class members, was exposed to Defendants' misrepresentations and suffered injury.

40.    Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

41.    Certification of this class action is appropriate under F.R.C.P. 23(b) because the above questions of law or fact common to the respective members of

15

1  the Class predominate over questions of law or fact affecting only individual

2  members.  This predominance makes class litigation superior to any other method

3  available for the fair and efficient adjudication of these claims.

4      42.    Absent a class action, it would be highly unlikely that the Plaintiff or

5  any other Class members could protect their own interests because the cost of

6  litigation through individual lawsuits would exceed any expected recovery.

7      43.    Certification is also appropriate because Defendants have acted or

8  refused to act on grounds applicable to the Class, making appropriate final

9  injunctive relief with respect to the Class as a whole.

10     44.    Further, given the large number of purchasers and lessees of the

11  Subject Vehicles, allowing individual actions to proceed in lieu of a class action

12  would risk yielding inconsistent and conflicting adjudications.

13     45.    A class action is a fair and appropriate method for the adjudication of

14  this controversy, in that it will permit many claims to be resolved in a single forum

15  simultaneously, efficiently, and without the unnecessary hardship that would result

16  from the prosecution of numerous individual actions and the duplication of

17  discovery, effort, expense and burden on the courts that such individual actions

18  would engender.

19     46.    The benefits of proceeding as a class action, including providing a

20  method for obtaining redress for claims that would not be practical to pursue

21  individually, outweigh any difficulties that might be argued regarding the

22  management of this class action.

## COUNT I

**Unlawful, Unfair, and Fraudulent Business Acts
and Practices – Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.**

26     47.    Plaintiff repeats every allegation contained in the paragraphs above

27  and incorporates such allegations by reference.  Plaintiff brings this cause of action

28  on behalf of the Class.

48.     This cause of action is brought under the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*, which provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code." Defendants' practices were intended to promote the sale or lease of the Subject Vehicles and constitute unfair, deceptive and/or unlawful business practices within the meaning of California Business & Professions Code § 17200, *et seq.*

49.     Defendants committed unfair business acts and/or practices. Specifically, Defendants engaged in extensive national marketing and advertising to promote and sell the Subject Vehicles as having higher gas mileage than they could achieve and that were calculated in violation of federal regulations.

50.     The utility of Defendants' practices related to the advertising, marketing, promotion and sale of the Subject Vehicles misrepresenting or without disclosing, or in adequately disclosing, the true material facts stated above is negligible, if there is any utility at all, when weighed against the harm to the general public and members of the Class.

51.     The adverse impact upon members of the general public and the Class who purchased or leased and used one of the Subject Vehicles outweighs any reasons or justifications by Defendants for the unfair business practices Defendants employed, particularly considering the reasonably available alternatives.

52.     Defendants had an improper motive (profit before accurate marketing) in their practices related to the advertising, marketing, promotion and sale of the Subject Vehicles.

53.     Using such unfair business acts and practices was and is under the sole control of Defendants, and was deceptively concealed from Plaintiff, other members of the Class, and the general public such that they could not reasonably

1   determine this inaccuracy prior to purchasing or leasing the Subject Vehicles.

2        54.    Defendants engaged in deceptive business acts or practices by

3   misrepresenting, failing to disclose, or adequately disclose, to the consumers

4   targeted by and exposed to Defendants' advertising and promotional campaign the

5   accurate miles per gallon that would be achieved by the Subject Vehicles as

6   represented.

7        55.    These deceptive acts and practices had a capacity, tendency, and/or

8   likelihood to deceive or confuse reasonable consumers into believing the Subject

9   Vehicles could achieve the represented miles per gallon that they could not achieve

10   or did not have.

11        56.    Defendants also engaged in unlawful business practices by violating

12   the state and federal laws set forth herein the requirements of the Federal Trade

13   Commission for advertisements of gas mileage figures as set forth in 16 C.F.R. §

14   259, committing systematic violations of the state consumer protection statutes and

15   warranty laws detailed herein. Defendants also violated the MMWA, as alleged.

16   The violations of these laws serve as predicate violations of the "unlawful" prong

17   of the California Business & Professions Code § 17200, et seq.

18        57.    As purchasers of one of the Subject Vehicles who, as alleged above,

19   were exposed to the misrepresentations and would not have paid the prices they

20   did, if at all, if the true facts had been disclosed to them, Plaintiff has standing and

21   is entitled to seek all available remedies under the UCL.

22        58.    Under California Business & Professions Code § 17203, as a result of

23   Defendants' violations of the UCL, Plaintiff and members of the Class are entitled

24   to injunctive relief restitution for out-of-pocket expenses, and an order disgorging

25   from Defendants and restoring to members of the California Class all monies that

26   may have been acquired by Defendants because of such unfair, deceptive and/or

27   unlawful business acts or practices.

28        59.    Under California Civil Code § 3287(a), Plaintiff and members of the

18

1    Class are further entitled to pre-judgment interest as a direct and proximate result

2    of Defendants' wrongful conduct. The amount on which interest is applied is a

3    sum certain and capable of calculation in an amount according to proof.

## COUNT II

### Untrue, Misleading or Deceptive Advertising – Violation of
### Cal. Bus. & Prof. Code § 17500, *et seq.*

7        60.    Plaintiff repeats every allegation contained in the paragraphs above

8    and incorporates such allegations by reference. Plaintiff brings this cause of action

9    on behalf of the Class.

10       61.    The conduct and actions of Defendants complained of herein

11   constitute unlawful, unfair and/or fraudulent actions in violation of the False

12   Advertising Law (the "FAL"), California Business & Professions Code §§ 17500,

13   *et seq.*

14       62.    Defendants overstated the miles per gallon ratings for the Subject

15   Vehicles when they reasonably should have known those representations were

16   deceptive, inaccurate, and likely to deceive reasonable consumers and cause them

17   to buy the vehicles. Such representations were made in or originated in and

18   emanated from this State. Members of the Class were exposed to such claims. As

19   purchasers and lessees of the Subject Vehicles exposed to the misrepresentations at

20   issue Plaintiff would not have paid the prices he did for the Subject Vehicle, if at

21   all, if the true facts had been disclosed. Plaintiff has standing and is entitled to

22   bring this action seeking all available remedies under the FAL.

23       63.    Under California Business & Professions Code § 17535, Plaintiff seek

24   an order for injunctive relief and also to engage in a corrective advertising

25   campaign to correct the misperceptions in the market created by Defendants'

26   conduct. Because of Defendants' violations of the FAL, Plaintiff is also entitled to

27   restitution for out-of-pocket expenses in terms of the price or price premium they

28   paid for the Subject Vehicles and excess gasoline costs, or an order disgorging

1  from Defendants and restoring to members of the Class all monies that may have

2  been acquired by Defendants because of such acts or practices.

3      64.    Under California Civil Code § 3287(a), Plaintiff and members of the

4  Class are further entitled to pre-judgment interest as a direct and proximate result

5  of Defendants' wrongful conduct.  The amount on which interest is applied is a

6  sum certain and capable of calculation, and they are therefore entitled to interest in

7  an amount according to proof.

8                              **COUNT III**

9               **Breach of Express and Implied Warranty**

10     65.    Plaintiff repeats every allegation contained in the paragraphs above

11 and incorporates such allegations by reference.  Plaintiff brings this cause of action

12 on behalf of the Class.

13     66.    Plaintiff and other members of the Class formed a contract with

14 Defendants when they purchased or leased a Subject Vehicle or based on the

15 promises and affirmations of fact made by Defendants on the Subject Vehicles and

16 in advertising, upon which Plaintiff and members of the Class were exposed to and

17 acted in positive and material response to in purchasing or leasing the Subject

18 Vehicles at the prices they did.  These representations constitute express warranties

19 that became part of the basis of the bargain.

20     67.    Such representations also created implied warranties that the Subject

21 Vehicles conformed to such representations and would pass without objection in

22 the trade or industry.

23     68.    All conditions precedent to seeking liability under this claim for

24 breach of express and implied warranty have been performed by or on behalf of

25 Plaintiff.

26     69.    Defendants breached the terms of these express and implied

27 agreements and warranties by not providing Subject Vehicles that provide and

28 conform with the promised benefits, as described above.

20

70.   Because of Defendants' systematic breach of warranties, including violations of the California Song-Beverly Warranty Act, Plaintiff and other members of the Class have been damaged for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT IV

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

71.   Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of the Class.

72.   Plaintiff and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*

73.   Defendants are a "supplier" and "warrantor" within the meaning of the MMWA.

74.   The Subject Vehicles are a "consumer product" within the meaning of the MMWA.

75.   Defendants' written affirmations of fact, promises and/or descriptions as alleged are each a "written warranty," and there exists an implied warranty for the sale of such Subject Vehicles within the meaning of the MMWA.

76.   Defendants breached these express and implied warranties, as the Subject Vehicles did not provide the properties Defendants represented.  Defendants have refused to remedy such breaches despite prior demand therefor.

77.   The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined.

78.   Resorting to any informal dispute settlement procedure and/or affording Defendants an opportunity to cure these breaches of warranties is unnecessary and/or futile.  Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances.  Any

1  requirement under the MMWA or otherwise that Plaintiff resort to any informal
2  dispute settlement procedure and/or afford Defendants a reasonable opportunity to
3  cure the breach of warranties described above is excused and/or has been satisfied.

4       79.    Because of Defendants' breaches of warranty, Plaintiff and the Class
5  members have sustained damages and other losses in an amount to be determined at
6  trial as described above, and therefore are entitled to recover damages, costs,
7  attorneys' fees, rescission, and/or other relief as deemed appropriate.

8  **PRAYER FOR RELIEF**

9      WHEREFORE, Plaintiff, for himself and all others similarly situated, pray
10  for relief against Defendants, jointly and severally under each Count in this
11  Complaint as follows:

12      1.    For an order certifying the Class and appointing Plaintiff's counsel as
13  Class Counsel;

14      2.    For an award of equitable relief as follows:

15          a.    An order enjoining Defendants from continuing to engage, use,
16  or employ any unlawful, unfair and/or deceptive business acts or practices and from
17  refusing to engage in a corrective advertising campaign;

18          b.    An order awarding restitution for out-of-pocket expenses and
19  economic harm and disgorging and restoring all monies that may have been
20  acquired by Defendants because of such acts and/or practices;

21      3.    For an award of damages as permitted by law;

22      4.    For an award of attorneys' fees under, *inter alia*, Cal. Code Civ. Proc.
23  § 1021.5, and the MMWA;

24      5.    For pre- and post-judgment interest on any amounts awarded;

25      6.    For an award of costs; and

26      7.    For an Order providing such further relief as may be found just and
27  proper.

28

22

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 5, 2012

DOYLE LOWTHER LLP

By: _____
William J. Doyle II (188069)
bill@doylelowther.com

James R. Hail (SBN 202439)
10200 Willow Creek Rd., Suite 150
San Diego, CA 92131
Tel: (858) 935-9962
Fax: (858) 939-1939

WHATLEY KALLAS, LLC

By: _____
Alan M. Mansfield (125998)
amansfield@whatleykallas.com

355 So. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel: (310) 684-2504
Fax: (888) 331-9633

WHATLEY KALLAS, LLC
Joseph R. Whatley, Jr. (To Be Admitted
*Pro Hac Vice*)
Patrick J. Sheehan (To Be Admitted *Pro
Hac Vice*)
jwhatley@whatleykallas.com
psheehan@whatleykallas.com
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 447-7070
Fax: (212) 447-7077

*Attorneys for Plaintiff*

23